CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 08 2011

BY: JULIA C. DUDLEY, CLERK
  DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| LISA V. CECIL,<br><br>                                        *Plaintiff,*<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>*Commissioner of Social Security,*<br><br>                                        *Defendant.* | CIVIL ACTION No. 6:10-CV-00009<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff brought this action for review of the Commissioner of Social Security's final decision denying her claims for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). The matter is before the court on consideration of the following: the parties' cross-motions for summary judgment (docket nos. 13 and 15); the Report and Recommendation ("Report," docket no. 23) of United States Magistrate Judge Michael F. Urbanski[1]; Plaintiff's objections (docket no. 24) to the Report; objections (docket no. 25) to the Report filed by the Commissioner of Social Security ("Commissioner," or "Defendant"); and Plaintiff's response (docket no. 26) to Defendant's objections.

In his Report, Judge Urbanski recommends that I deny the Commissioner's motion for summary judgment, grant Plaintiff's motion for summary judgment, and remand the case to the Commissioner for further vocational assessment pursuant to Sentence four of 42 U.S.C. § 405(g). As the parties timely filed objections to the Report, I am obligated to

---

[1] On December 1, 2010, President Obama nominated Judge Urbanski to the United States District Court for the Western District of Virginia on December 1, 2010. Judge Urbanski issued his Report on January 27, 2011. Thereafter, on May 12, 2011, the Senate confirmed the nomination, and Judge Urbanski received his judicial commission on May 13, 2011.

undertake a *de novo* review of those portions of the Report to which objections properly were made. 28 U.S.C. § 636(b); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). Having conducted such a review, I find that the objections are without merit and that Judge Urbanski was correct in concluding that, although the Administrative Law Judge ("ALJ") properly considered the medical evidence and assessed Plaintiff's credibility, careful review of the vocational expert's testimony requires remand for further administrative consideration. Accordingly, for the reasons stated herein, I will overrule the objections and will adopt the Report *in toto*.

I.

The Commissioner's factual findings must be upheld if they are supported by substantial evidence and were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is responsible for evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545. Any conflicts in the evidence are to be resolved by the Commissioner (or his designate, the ALJ), not the courts, and it is immaterial whether the evidence will permit a conclusion inconsistent with that of the ALJ. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The court may not re-weigh conflicting evidence, make credibility determinations,

or substitute its judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the court may only consider whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Craig*, 76 F.3d at 589. However, determining whether the evidence presented by the ALJ to support his decision amounts to substantial evidence is a question of law, and therefore will be considered anew. *Hicks v. Heckler*, 756 F.2d 1022, 1024-25 (4th Cir. 1985) (*abrogated on other grounds by Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988). Furthermore, "ALJs have a duty to analyze 'all of the relevant evidence' and to provide a sufficient explanation for their 'rationale in crediting certain evidence.'" *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (citations omitted).

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's ruling to the district court within fourteen days of the order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b). The district court conducts a *de novo* review of those portions of a magistrate's report and recommendation to which specific objections were made. Fed. R. Civ. P. 72(b)(3); *Orpiano*, 687 F.2d at 48. General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object. *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (2008). Those portions of the magistrate judge's report and recommendation to which no objection are made will be upheld unless they are clearly erroneous or contrary to law. *See Orpiano*, 687 F.2d at 47 (citing *Webb v. Califano*, 468 F. Supp. 825, 830 (E.D. Cal.1979)). The district court may accept, reject, or modify the recommended disposition based on its *de novo* review of the recommendation and the objections made. Fed. R. Civ. P. 72(b)(3).

## II.

By counsel, Plaintiff objects to Judge Urbanski's findings that there was no error in the ALJ's consideration of the treating physician rule and the claimant's credibility, and requests that the court not adopt these portions of the Report.

*A.*

Plaintiff states that "[t]he Magistrate Judge found that the ALJ appropriately rejected the opinions of [her] treating physician" on the grounds that "he only treated [Plaintiff] for a short period of time, and because his examination findings were generally unremarkable." Citing 20 C.F.R. § 404.1527(d)(2)(i), Plaintiff contends that "length of treatment is only one factor for the ALJ to consider when weighing a medical opinion and is hardly dispositive." Plaintiff adds that the treating physician "explained in his detailed questionnaire the medically acceptable findings that did support his opinion based on [his] treatment of" Plaintiff, and that "[t]he ALJ failed to indicate what about these findings contradicted Dr. Swartz's treatment records." However, in his Report, Judge Urbanski hardly disposed of the treating physician's opinion with the scant consideration implied by Plaintiff's objections. Indeed, Judge Urbanski embarked on a thorough discussion regarding the weight the ALJ gave Dr. Swartz's opinions, and determined that, in addition to Dr. Swartz's opinions having been rendered a short time after treatment began, "treatment records do not support [Dr. Swartz's] opinions as to [Plaintiff's] functional limitations," and therefore "substantial evidence supports the ALJ's decision" to give Dr. Swartz's opinions "some – but not controlling – weight."

A treating physician's opinion is to be given controlling weight by the ALJ *if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro*, 270 F.3d at 178 ("a treating physician's opinion on the nature and severity of the claimed impairment is entitled to

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . ."); Social Security Ruling ("SSR") 96-2p.

In determining the weight to give to a medical source's opinion, the ALJ must consider *a number of factors*, including whether the physician has examined the applicant, the *existence of an ongoing physician-patient relationship*, the *diagnostic and clinical support for the opinion*, *the opinion's consistency with the record*, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. *Mastro*, 270 F.3d at 178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

The record discloses that Dr. Swartz's first opinion as to Plaintiff's functional capacity (that she was unable to work for at least a year) was set forth in the form of a note written on a prescription pad a mere seven days after he first examined her on October 30, 2007. However, the treatment notes from that initial visit do not provide any support for Dr. Swartz's conclusion that Plaintiff is completely disabled from all work. Rather, the notes indicate that Plaintiff was in no acute distress and had fair coordination, normal reflexes and sensation, and 5/5 motor function in all extremities. (R. 305.) Dr. Swartz stated that Plaintiff's gait slightly favored the

right, and that she had mild rightwards rotation of the thoracic spine, mild elevation of the right scapula, tenderness in the trapezius muscles, and generalized tenderness in the left side, which appeared to be muscular in nature. (R. 305.) Her scoliosis was apparent. (R. 305.) Dr. Swartz diagnosed Plaintiff with idiopathic thoracolumbar scoliosis and compensatory myofascial pain, predominantly involving the trapezius muscles, and a three right rib-tip syndrome, and recommended conservative treatment, including physical therapy, trigger point injections, a TENS unit, deep tissue massage, pain medication, and anti-inflammatories. (R. 305.) Nothing in these records from her initial visit to Dr. Swartz indicates that Plaintiff is disabled from all work. Accordingly, I agree with Judge Urbanski that Dr. Swartz's prescription pad note of November 6, 2007, is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Dr. Swartz opined as to Plaintiff's functional limitations in a Multiple Impairment Questionnaire dated January 14, 2008, but Judge Urbanski was correct in determining that this residual functional capacity ("RFC") assessment is not entitled to controlling weight. In his questionnaire responses, Dr. Swartz stated that Plaintiff could sit for 3-4 hours and stand/walk no more than one hour in an eight hour day. (R. 294.) He further stated that she could not sit, stand or walk continuously and had to get up and move around every 30-45 minutes; that she could only occasionally lift 5-10 pounds; that she is significantly limited in her ability to reach, handle, finger; and that she had moderate limitations in her ability to reach overhead and grasp or twist objects. (R. 294-96.) He also stated she would need to avoid heights, pushing, pulling, kneeling, bending or stooping. (R. 298.) When asked about the onset of these limitations, he responded, "5+ years / I'm really unsure to be honest." (R. 298.)

However, when Dr. Swartz filled out the Multiple Impairment Questionnaire, he had

treated Plaintiff only three times, and the severe limitations set forth in the questionnaire are not supported by the treatment records. Records from these visits indicate that Plaintiff was in no acute distress, and had normal sensation and normal range of motion in her extremities. (R. 300, 302, 305.) She had muscle tenderness and increased pain with extension of the back, and Dr. Swartz diagnosed her with scoliosis, myofascial pain, and lumbar facet disease. (R. 300.) Treatment remained conservative, and Plaintiff reported improvement in her symptoms. Dr. Swartz encouraged flexion and leg range of motion exercises, and directed Plaintiff to continue her therapy and medications. (R. 300.)

Thus one can see that the severe limitations set forth in the Multiple Impairment Questionnaire are not supported by the treatment records. Three months after filling out this questionnaire, in March 2008, Dr. Swartz noted that he hoped to increase Plaintiff's physical activity and improve her core muscle strengthening and posture. (R. 335.) Plaintiff did not seek treatment for back pain for nine months after that, until she presented to Dr. Swartz on December 19, 2008 (the treatment notes from this visit indicate that Plaintiff had not followed up with Dr. Swartz because she had moved and lacked transportation). (R. 332.) At the time, she was working part time as a cashier 15 hours per week, although she continued to complain of pain. (R. 332.) Examination revealed that Plaintiff was in no acute distress and stood without any obvious tenderness, but that she had some discomfort with flexion, extension and lateral bending. (R. 332.) Dr. Swartz noted that physical therapy would be a "key" element of her treatment, and he continued her on pain medication and anti-inflammatories. (R. 332.) Significantly, Dr. Swartz noted he would "restrict her work to sedentary duty, essentially" (R. 333), which is inconsistent with his statement of November 6, 2007, that Plaintiff is unable to perform any work. Her status as of January 2009 remained essentially the same, except that she

was experiencing increased anxiety because her house had burned and she was obligated to move. (R. 330.) Dr. Swartz continued to recommend therapy and prescribed medication for her pain, as well as for anxiety.

Dr. Swartz stated in the questionnaire that he based his RFC findings on a MRI performed on December 26, 2007, noting that the study showed multi-level facet arthrosis and only mild disk disease in the lumbar spine.[2] These findings do not support the significant limitations set forth in the Multiple Impairment Questionnaire. (R. 293.) Nor do the diagnostic studies in the record. Radiograph and MRI images taken in January 2006 reveal prominent scoliosis but otherwise mild findings, with no neural foraminal narrowing or nerve compression. (R. 222, 225, 228.) The record indicates that Plaintiff has been treated conservatively, and doctors have consistently recommended physical therapy over surgery. (*See* R. 267.) Hans Hansen, M.D., a pain management specialist who twice performed lumbar facet interventions on Plaintiff, stated on February 19, 2008, "I do not plan another intervention. She is a young vital member of society. I would like her to consider some type of vocational retraining. I do not want to see her go down the pathway of prolonged disability." (R. 336.)

The ALJ considered Dr. Swartz's opinions regarding Plaintiff's functional limitations and incorporated into the RFC those findings that were supported by the medical evidence of record, *e.g.*, a sit/stand option that would allow Plaintiff to change positions at will and as often as needed for comfort. (R. 18.) The ALJ considered that plaintiff's pain would interfere with her attention and concentration, restricting her to unskilled work consisting of non-complex, routine, repetitive tasks in a low-stress environment that does not require work at a production

---

[2] The MRI of December 26, 2007, is not part of the administrative record.

rate. (R. 18.) The ALJ also incorporated Plaintiff's postural limitations into the RFC, finding that she could not climb ladders, ropes or scaffolds; can only occasionally climb stairs and ramps; can only occasionally stoop, bend, kneel, crouch or crawl; and cannot twist more than required in the course of daily living. (R. 18.) This RFC assessment is consistent with the findings of the consultative examiners, Dr. Rosenbloom (physical) and Dr. Lucas (mental), and the reviewing state agency physicians.

Dr. Rosenbloom noted that Plaintiff had full range of motion in her cervical spine but decreased range of motion in the thoracolumbar spine in all directions, secondary to moderate to severe scoliosis. (R. 231.) He also stated that she had full range of motion in her shoulders, elbows, wrists, hands, fingers, hips, knees and ankles, and she had 5/5 strength in her hand grasp. (R. 231.) Her gait was normal; she could raise her hands over her head and manipulate small objects with both hands; her coordination, sensation, and reflexes were normal; and straight leg raising was negative bilaterally. (R. 231.) She could not stand on her heels and squatted and rose with great difficulty. (R. 231.) Dr. Rosenbloom concluded that Plaintiff's severe scoliosis affected her ability to sit, stand, move about, lift, carry and travel, but that she had no problem with handling light objects, hearing, and speaking. (R. 231.) Dr. Lucas noted during her psychological consultation that Plaintiff is "able to understand, retain and follow instructions. She is able to sustain attention and perform simple, routine, repetitive tasks that is [sic] limited only by her reported scoliosis condition. She has a good ability relating with others and could likely handle supervision without difficulty. There is no psychological evidence to indicate that she would have any more difficulties than anyone else tolerating the stress and pressures associated with day-to-day work activity." (R. 246.) And, the ALJ's RFC determination is consistent with the assessment made by reviewing physician, Robert Gardner, M.D., who stated

that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, was limited in her ability to push and pull with her lower extremities, and had some postural limitations. (R. 283-84.) Indeed, it is noteworthy that the other reviewing state agency physician, Robert N. Pyle, M.D., determined that Plaintiff was much less restricted by her impairments, finding she could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds with unlimited pushing and pulling with no other postural limitations. (R. 237.)

> Given the record, I adopt Judge Urbanski's conclusion that
>
> [t] he decision not to give Dr. Swartz's opinions controlling weight is supported by substantial evidence, given the short duration of Dr. Swartz's treatment, the conservative nature of his treatment, and the lack of objective findings to support the degree of limitation set forth by Dr. Swartz. This aspect of the Commissioner's decision is supported by substantial evidence.

Accordingly, the objection is overruled.[3]

---

[3] Plaintiff also includes a footnote contending that "[t]he Magistrate Judge fails to address the fact that if the ALJ found the evidence insufficient or conflicting, he had an affirmative duty to develop the record," and that the Report "fails to address Plaintiff's argument that the medical sources relied upon by the ALJ are not substantial evidence upon which he was entitled to rely."

Essentially, the first of these objections lodged in the footnote asserts that the ALJ did not fulfill her duty to develop the record because she did not re-contact Dr. Swartz. This argument fails for two reasons. First, it is Plaintiff's burden to provide evidence proving her disability. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A), 1382c(a)(3)(A), (d)(2)(A); 20 C.F.R. §§ 404.1505(a), 404.1512(a), 416.905(a), 416.912(a). Second, an ALJ is required to seek additional information only when the evidence of record is inadequate to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1512(e)(i), 416.912(e)(i). The evidence was sufficient to show that Plaintiff was not disabled from all work. Accordingly, the ALJ had no duty to re-contact any physicians of record. My review of the record, as recounted above, indicates that the ALJ sufficiently developed the record and provided abundant reasoning for discounting, in part, Dr. Swartz's opinions.

Regarding "Plaintiff's argument that the medical sources relied upon by the ALJ are not substantial evidence upon which he was entitled to rely," Plaintiff contended in her brief in support of her motion for summary judgment that Dr. Rosenbloom "did not specify to what degree [Plaintiff] would be limited in sitting, standing, moving, lifting, carrying, and traveling," and that an "ALJ cannot, in essence, fill in the blanks for the medical consultant." Citing 20 C.F.R. § 404.1519p and § 416.919p, Plaintiff states that "[t]he Regulations advise that when a consultative examination report is incomplete, the Commissioner is required to contact the source and obtain the missing information." However, contrary to Plaintiff's assertions, Dr. Rosebloom's findings were not "ambiguous"; as recounted above, Dr. Rosenbloom concluded that, although Plaintiff's severe scoliosis affected her ability to sit, stand, move about, lift, carry and travel, she had no problem with handling light objects, hearing, and speaking. (R. 231.) Furthermore (and as recounted above), reviewing physician Robert Gardner, M.D. stated that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, although she was limited in
(continued...)

**B.**

Plaintiff asserts that

> [t]he Magistrate Judge found that the ALJ appropriately discredited Ms. Cecil's subjective complaints because there were repeated references to her sitting for more than the 20 to 30 minute period she alleged was her limit for sitting and on the basis that her daily activities were inconsistent with her allegations (R&R, p. 12).
>
> However, *as detailed in Plaintiff's opening brief,* the observations by the ALJ and a lay social security clerk, who indicated Ms. Cecil sat and did not appear in distress are entitled to little weight (Pl. Mem., p. 20). In addition, the ALJ did not reject Ms. Cecil's complaints on the basis of her daily activities. *As noted in Plaintiff's reply brief,* this argument was an impermissible post-hoc rationalization by the Commissioner (Pl. Reply, p. 2-3). Regardless, her activities were not inconsistent with her allegations. *Id.*

(Emphasis added.)

As I have already observed, general objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object. *Veney*, 539 F. Supp. 2d at 845. The instant objection merely incorporates and repeats arguments already presented – essentially, the

---

[3](...continued)
her ability to push and pull with her lower extremities, and had some postural limitations (R. 283-84.), and the other reviewing state agency physician, Robert N. Pyle, M.D., determined that Plaintiff was much less restricted by her impairments, finding she could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds with unlimited pushing and pulling with no other postural limitations. The regulations specifically charge an ALJ with the duty to evaluate medical opinions. 20 C.F.R. §§ 404.1527, 416.927. In doing so, an ALJ will give the opinion the weight she deems appropriate based on factors such as whether a physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the physician's records of treatment, and with the record as a whole. 20 C.F.R. §§ 404.1527(d)(1)-(4), 416.927(d)(1)-(4). The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or *if there is contrary medical evidence. See, e.g., Mitchell v. Astrue*, 2009 WL 4823862, at *7 (E.D. Va. Dec. 11, 2009) (citing SSR 96-6p) ("In appropriate circumstances ... the opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may be entitled to more weight than the opinion of an examining source, or even the opinion of a treating source"). The ALJ examined the opinion of Dr. Swartz, and found that, although Dr. Swartz's opinion was not entitled to great weight, it was entitled to some weight, and the ALJ incorporated the limitations identified by Dr. Swartz that were consistent with the evidence of record into Plaintiff's RFC.

objection simply refers to a previous arguments – and thus it fails to specifically object. Nonetheless, out of an abundance of caution, I will address the objection. As discussed in the previous section, regarding Plaintiff's first objection, the ALJ discounted Plaintiff's subjective complaints on the basis of abundant evidence in the record, finding that Plaintiff's statements regarding the limiting effects of her pain were not credible to the extent they were inconsistent with the RFC determination. The disability application does, in fact, indicate that Plaintiff sat through the entire 70 minute interview without moving or shifting or showing signs of pain (R. 153), and this is, in fact, consistent with the ALJ's observation that Plaintiff sat through the entire administrative hearing in no apparent discomfort (R. 19), as well as reflections in the treatment records that she appeared to be in no pain or distress (*see, e.g.*, R. 300, 302, 305, 321), she moved around the exam room well (R. 267), and she was able to get on and off the exam table without difficulty (R. 223). Furthermore, the record indicates that Plaintiff

> reported to Dr. Lucas during the consultative examination that she takes her dog for a walk each day, does chores, does laundry, cooks, cleans and grocery shops for the household as necessary. (R. 245.) She testified that she is able to do the dishes, wipe off the table, dress herself, make the bed, and take the stairs into her house. (R. 38, 39.) She helps her son with homework and attends school conferences. (R. 40.) She testified that her pain is minimized with medication. (R. 35.) Cecil was encouraged by her physical therapist to increase her activity level and time out of bed, and she was noted to be taking her son to football practice and games four times per week. (R. 271, 272.) Cecil last worked in March, 2007 as a customer service representative in a call center. Although she testified that she "let the job go" due to back problems (R. 29), she reported to Dr. Lucas during her consultative examination that she was fired for forgetting to "ask about woman's last name on the phone and it was being monitored." (R. 245.)

(Report 12-13.) Accordingly, Judge Urbanski correctly found no reason to disturb the ALJ's credibility determination. The ALJ carefully considered the medical evidence and accounted for Plaintiff's pain and impairments in finding she could perform a limited range of light work.

Substantial evidence in the record supports this aspect of the Commissioner's decision.

### III.

Defendant objects on the ground that remand for further vocational expert ("VE") testimony is not required because the only unclear VE testimony was in response to a hypothetical question that was found to be unsupported. However, this objection fails. The transcript of the VE's testimony supports Plaintiff's contentions that the VE apparently believes that a person need only work four hours a day to work full-time, or that an individual need only concentrate for two-and-a-half hours out of an eight-hour day to perform full-time work. As Judge Urbanski observed, the ALJ's decision failed to acknowledge the imprecision of the VE's testimony, Defendant's opening brief fails to address Plaintiff's challenges to the clarity of the VE's testimony, and "[a] reviewing court ought not be placed in a position requiring guesswork as to what the VE meant by her testimony." Judge Urbanski found that the VE's entire testimony was called into question because it was unclear if the expert was aware that work must be available for the claimant in a full-time capacity. Defendant has failed to cite any evidence that suggests otherwise. Accordingly, Defendant's objection is overruled.

### IV.

Having undertaken a *de novo* review of those portions of the Report to which objections were made, I find that the parties' objections are without merit. Accordingly, I will enter an order overruling the objections, adopting the Report *in toto*, denying the Commissioner's motion for summary judgment, granting Plaintiff's motion for summary judgment, and remanding the case to the Commissioner for further vocational assessment pursuant to Sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court will be directed to send a certified copy of this memorandum

opinion and the accompanying order to all counsel of record and to United States District Judge Michael F. Urbanski.

Entered this 8th day of July, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE